Thank You counsel we appreciate your arguments and we'll submit the case and counsel are excused. I'll call the next case. Case number 20 1391 Denver Bible Church v. Becerra. Ms. Messel. Thank you may it please the court. Thank you for me. Baptist Church and Denver Bible Church. Is this appeal moot? No, it's not under Tandon Roman Catholic Diocese and decades of similar rulings. Since this is an interlocutory appeal the question is did the district court make errors of law denying injunctive relief against federal defendants and broader injunctive relief against state defendants? Yes on three Why does Colorado's Disaster Emergency Act require strict scrutiny? Well, it's because state defendants claim that it gives them a legal authority to deprive my clients of free exercise without due process of law. This is our third claim for relief. Appendix 44. Federal defendants or against the state? Right now I'm talking about state defendants. What I'm sorry, the state defendants, the governor and the public health authority. And granted, I know Judge Domenico did look at the statute, but he didn't conduct that most rigorous scrutiny that's required by the Kumi because as we pleaded and may have caused confusion, but the way it's argued is that number one, the profusion of exemptions in the statute and the mandates from bike shops to marijuana and liquor stores to news and comment and labor disputes, it shows that the government itself does not regard it as having a compelling interest in violating free exercise. And it also shows a lack of narrow tailoring. But number two, they have no compelling state interest because they have no legal authority under the Colorado Constitution's mode of worship protection. And number three, there's no compelling state interest because the city itself only delegates authority to the governor over the state's business, not to issue general dictates and to individuals and churches. Could you help us with what orders are presently in place and what orders you're presently challenging? Those mandates are expired as far as I know, your honor. So what we're talking about is movements if they're expired. I know that was made very clear by Justice Gorsuch in the Roman Catholic Diocese case. In his dissent. Right. And then Trinity Lutheran, though, that was footnote number one. In tandem, that was the case that came out right after we filed our opening brief, we got it in as a 28-J. Let's talk about tandem. You mentioned tandem in your opening. I don't understand how this case is similar to tandem. The court there talked about California officials having a track record of moving the goalposts and constantly changing status quo. The fact that they could reinstate restrictions at any time. That's just not what's been happening here in Colorado. They've consistently decreased the restrictions. The rate of COVID transmission falls. They've decreased the restrictions. We just don't have the tandem set of facts for one thing. Well, we've challenged under the First Amendment, their authority to have done these mandates. I understand that. I'm asking you about the mootness issue now and why this isn't moot. Well, I don't think it would be material that they haven't yet. Because what Justice Gorsuch said is that they can do it at any time. And that's the issue that- That was the tandem B. Newsom case. Why is that the same here? Because tomorrow, if there's a whiff of smoke from Larimer County, or if there's the presence of a new COVID-like virus that the governor can implement the same things at any time, there's nothing stopping him. So it's not moot. That's not really the standard, is it? That there's nothing stopping him? If that were the standard, we would never have mootness as long as the governor could issue an executive order. And that's not correct. Well, actually, the way it was stated by Justice Gorsuch was he can reinstate this tomorrow. Let's talk about your argument, which I understood on the mootness was that you said you want us to apply the voluntary cessation exception. That's how you get past mootness, correct? Correct. And what does that- What does that require? What does that exception require you to show us? The language is just that they expire or are retracted according to the discretion of the executive. And that is the come and go. That's not what I'm asking. A voluntary cessation exception, if we're going to apply it, as I understand it, it exists. The point of it is to counteract the possibility of the state here ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct. That's not what's happening here, right? You're not suggesting that they ceased their, they've, you know, they've let these policies, the orders expire just so that they would, they could resume their illegal conduct after this lawsuit was mooted. That's not- Yeah. And that we can't know that without discovery, of course. What we're saying is that the measure in the First Amendment qualifications of the statute are measured by the mandates and what's been done under the name of the statute, the statute itself containing hundreds of thousands of exemptions. And now the mandates enlarge upon those exemptions. And that's what the lack of neutrality or the lack of, let's say, general applicability within the statute and the mandates is what requires strict scrutiny. And the mootness issue is that it's not, there's nothing to stop it from happening again until a declaration of this court says whether this violates free exercise or not. The second legal error besides strict scrutiny pertains to the 11th Amendment. Ben Hurst did not overrule Ex parte Young. It involved the state statute that violated the Fourth Amendment. It carefully notes that that's an exception to the 11th Amendment under the Supremacy Clause. The double standard here is in the Disaster Acts exemptions as well as the violation in the First and 14th Amendments. This whole regime has no due process for anybody and it's just considered an afterthought or not a thought. Let's put it that way. Third, as to standing the district court error because appellants are not bystanders with some generalized grievance against the federal defendants under some taxpayer suit analysis. Now you're talking federal defendants. You say standing is present here. And the dots that you're connecting here, as I understand it, is that there is emergency funding that flows from the federal government to the state. And then you say the state uses those funds then to impinge upon your rights. Well, yes. Let's talk about connecting the dots separate from Rule 65. So connecting the dots would be the idea that is advanced under Article 3 argument that this is just like a taxpayer suit and you have to prove redressability and you have to prove traceability. And so we think we, yes, meet that because it was initially $2.3 billion incentive to carry out the mandates that were carried out across the country by everybody getting funding under the same disaster declaration. Was there any requirement by the federal defendants that there be orders issued against your clients in any kind of direction at all from the federal defendants? Yes, under the FEMA statute. And that is in the record. I had the page, but I've forgotten it. The March 25th letter by the governor submitted these mandates, many of which are now under dispute in this lawsuit. And that was in order to obtain approval. So the federal defendants argue, well, you have to show bad faith by the federal government. We say, no, that's not true when it comes to the First Amendment. Under RFRA, it's not an animus test. It's just, yes, they did participate with the state defendants in violating free exercise. That's the test under Rule 65. That's a little different than the taxpayer's case that the district court utilized. And we believe that's not proper where you've got a statute that defines what you would call the chain of causation. So that's different than, again, the taxpayer suit test. The chain of causation in RFRA is implementing federal law and the deprivation of free exercise. Secondly, under Rule 65... So the FEMA statutes, tell me again what those connections are that you're making under Rule 65. Well, under Rule 65, it's just participation with. And we cited a Supreme Court case that had affirmed the Seventh Circuit in joining House Education and Welfare from funding a... I guess it was HUD that was funding a segregated project in Chicago. And the Supreme Court affirmed the standing is under RFRA, we argue, because it affords standing by its terms. Implementation of federal law. So we are citing two grounds for standing. If there aren't any questions, I reserve my time. Oh, yes, Your Honor. Is it your position that you would like a judicial order prohibiting all federal COVID-19 aid related to Colorado? Isn't that the track you're taking? Yes, until they comply with the First and Fourteenth Amendment, correct. So compliance, a court order against the state defendants would then be part of the order against the federal defendants and everything can go back to funding if they just leave the churches alone. Well, the money goes to the state, doesn't it? The money, yes, it goes to the state court. Yes. Other than for COVID. So I just really can't find anything fairly traceable to the federal defendants other than a general grant of money to the state. And if the state wants to use it to do whatever they want to do with COVID-19, then you might have another issue. I think the tracing argument goes back to our point that this isn't a taxpayer funding or taxpayer analysis case. This is a case under RFRA, which grants standing. And so you don't use traceability. You use implementation of federal law under RFRA. The second grounds for standing is Rule 65 because they are aiders and abettors. The federal government, though, has not done anything other than allocate funds to Colorado. That's a participation with under Rule 65. That's our argument under the case from the Seventh Circuit that was affirmed by the That was a specific grant for that particular project. That's how FEMA operates, too. They are specific approvals for each state. And actually, the allocations by Treasury under the CARES Act is the same thing. They figure out how many dollars each state gets. And it's very specific to each state. May I reserve the rest of my time? Mr. Sturgill. Thank you. I presume. I'll actually be myself. I'm sorry. Yeah. Who's on first? I am, Judge Kelly. Good morning, Your Honors. May it please the court, dismiss this appeal as moot because there's no reasonable expectation that appellants will be subject to the same challenge public health measures get. In the alternative, this court should affirm the district court's denial of appellant's request for injunctive relief as to the narrow substantive issues on appeal. You need to enunciate a little bit more. Your words are all blurring together. Sure. If I may, I'd like to start actually with your question, Judge Moritz, talking about the voluntary cessation standard because I want to make sure we get a clear answer to that. The standard is clear that a case might be moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not be reasonably be expected to reoccur. And that's from Friends of the Earth versus Laidlaw, the same case law that's cited in Tannen versus Newsom in Roman Catholic Diocese. You're dropping your voice and I don't hear in the last half of that sentence. Either speak up or turn up the volume. There you go. That might help. Let's see if that helps. Here, Your Honors, there is clear subsequent events that makes it absolutely clear that there's no reasonable expectation that appellants would be subject to the same challenge of public health measures again. And specifically... What about her argument that, you know, we don't know what's going to happen tomorrow? We have Delta variant right now and we have many others that are allegedly coming our way. So what's to to do what they've done before and maybe things even worse? So how is it moot? Justice Briscoe, there's a couple reasons why this case is still moot. First reason is we now have clear on-point decisions and guidance from the U.S. Supreme Court on House of Worship COVID-19 restrictions. Clear guidance that the state didn't have when these restrictions were put in place and at the time when Catholic Diocese of Brooklyn v. Cuomo, the Supreme Court issued clear guidance to states on how to and how not to impose restrictions on houses of worship. And what the state of Colorado did was that it listened. It listened, it understood the Supreme Court's guidance, and it put that into action. Capacity limitations were lifted off of houses of worship. Exemptions were included and still exist in the limited state masking orders that exist in today for when necessary to take off a mask to participate in a life right or religious service. So that first point, Your Honor, the fact that we have clear guidance from the Supreme Court makes clear there's no reasonable expectation that appellants are going to be subject to these types of non-pharmaceutical interventions like mask requirements or capacity limitations. The second point is we now have tools to respond to the COVID-19 pandemic that we didn't have. We now have pharmaceutical options to respond to COVID. We have COVID-19 vaccines, a number of pharmaceutical options. And Dr. Rachel Ehrlich, the state medical epidemiologist, explained to the district court below that without a pharmaceutical option to respond to COVID, that's really the only tools the state of Colorado had to respond was to implement these types of non-pharmaceutical interventions. But what you see now starting in late spring of 2021 is that state strategy has shifted. It shifted away from imposing these non-pharmaceutical interventions to focusing on increasing vaccination rates, increasing accessibility to these different types of pharmaceutical options. Simply tools that we didn't have before, we had to rely on these non-pharmaceutical interventions. Now that we have these pharmaceutical tools, that makes clear there's no reasonable expectation that the state will have to resort back to these non-pharmaceutical interventions. And I think one of the key points right now as well is what we're looking at right now here in the state of Colorado. You mentioned the Delta variant. Unfortunately, the Delta variant is causing substantial increase of cases, transmission increase, COVID hospitalizations, unfortunately deaths as well. But what you didn't see is the state of Pelley's resort back to imposing those non-pharmaceutical interventions. Again, the state has maintained its course and focusing on these pharmaceutical options to respond to COVID-19. And specifically, your honors, I would actually look at just this past weekend. This past weekend, the state released an amended public health order that put a vaccine requirement for indoor events over 500 people. A couple of things about that is, number one, there's a religious exemption in there. Houses of worship are explicitly carved out, so it doesn't apply to house of worship. But again, the state relied on the availability of the vaccine, making it a vaccine requirement, not to implement these types of capacity limitations or masking requirements that appellants challenged in the original complaint. So if we go back to the standard of whether or not there's a reasonable expectation, these events make clear that there is no reasonable expectation that appellants will be subject to the same challenge public health measures. And that's what makes this case starkly distinguishable from the mootness analysis that we saw in Tandon and the mootness analysis that we saw in Roman Catholic Diocese. In both of those cases, the court talks about how, quote, the applicants remain under a constant threat that government officials will use their power to reinstate the challenge restrictions. In Tandon in California, Roman Catholic Diocese in New York, in both of those states at the time cases were decided, the states had a dial system where restrictions on houses of worship could become less or more restrictive based on COVID-19 transmission. Colorado had a similar dial system. It's been repealed. No capacity limitations on houses of worship. But here, Your Honors, what you see at this point in time is that there simply just is not that constant threat. There is no constant threat that appellants will be subject to the same types of challenge public health measures that they challenged back in August 2020. Again, the state has numerous tools at its disposal now that it didn't have to respond to COVID-19. And the state has listened to the Supreme Court guidance and direction and has put that into place. So for those reasons, Your Honors, this case is moot. Well, tell me more about that, though. Is the entire case moot or just some of the allegations? Go ahead, I'm sorry. We viewed it as the entire case is moot. We asked simply for the case to be dismissed as moot, which is what precedent from this court has done with other COVID-19 cases within the Tenth Circuit. Have you filed a motion to that effect? No, we have not filed a motion to that ruling on this appeal that it rules that this appeal is moot. Well, we might need some more homework from the parties before we go there. Sure. I think where we're at right now on the substantive issues is again that this court does not need to rule on the substantive issues simply because the case is moot due to the subsequent events that we discussed. What about the facial challenge to the CDEA? How is that moot? Well, that case, that challenge is moot as well because this appellant's argument as to the CDEA, there's a facial challenge and an as-applied challenge. Specifically, appellants are focused on the facial challenge, what they're talking about now. However, there's no, again, there's no reasonable expectation that appellants will be subject to executive orders issued under the CDEA that will burden their religious practice. So again, that there's not a lot of controversy regarding the CDEA because there's no reasonable expectation that they will be subject to executive orders issued under the CDEA that burden religious practice. So for all those reasons, Your Honor, we contend that this case is moot. And I just very briefly would just like to respond to the CDEA facial challenge that appellants argued for scrutiny. The CDEA and the district court was correct in finding that there's nothing in the CDEA on its face standing alone that targets religious practice. Appellants can see this in their brief. I would point to opening brief at page 20, where they state again that the CDEA does not target religion. The CDEA on its face really doesn't do anything. It's just a vehicle through which the governor may exercise his or her authority to respond to disaster emergencies. So for those reasons, for the facial analysis, the analysis ends right there. Church of Okumi Babalui from the Supreme Court talks about how a law burdening religious practice is subject to strict scrutiny if it's neither neutral nor generally applicable. It's that first threshold question of whether or not the statute actually burdens religious practice where the facial challenge ends here. And then also, if you just look at the alleged exceptions as appellants call them, it's clear that they're not whole exemptions from the CDEA. And if you look at the executive orders in practice, all of those so-called exceptions that appellants challenge have never been accepted during COVID-19. So for those reasons, Your Honors, we would ask that this case be declared moot or in the alternative that the court affirmed the district court's denial. But at the moment, we have executive orders in place and public health orders in place? We do, Judge Briscoe. Both? We have got both of those? And we have in our record the most recent of each of those? I believe they're not in the record right now. However, we do cite to the CDPHE website where, again, all of the state's public health orders and executive orders are in place. You need to tell us where we are as far as the status of the record. And if recent orders have been entered, we need to know what they are. And if you're talking mootness, you need to tell us why it's moot. Sure. And we're happy to file notices with this court to inform and educate the court on where we currently are with the executive and public health orders. And for those reasons, Your Honor, I would like to turn it over to Mr. Sturgill as the federal plaintiffs. Good morning. May it please the court. Lowell Sturgill from the Department of Justice on behalf of the federal defendants. I'd like to begin with a response to one of Judge Briscoe's original question about standing and causation and the question about whether the plaintiffs can connect the dots to show that federal aid provides standing here. And the point I want to make is that there's no allegation in the complaint that Colorado spent a single dime of federal COVID aid money on the COVID orders that they challenged in this case. And not only is that the case, but the record affirmatively shows that is actually not the case. And I would first point to the TURI declaration, which is in the record at pages 836 and 837. And the TURI declaration explains what the FEMA money was actually authorized to compensate for. And it shows that it's for personal protective equipment, for sheltering, medical care facilities, counseling, lost wages. That's what the record shows is to the Stafford Act FEMA aid. And then the complaint itself describes what the CARES Act aid is available to help with. And that is business payroll loans and unemployment compensation and food assistance. So plaintiff's causation argument against the government is first of all, factually flawed based on the absence of any credible allegation that any federal aid went to support these orders. Beyond that, even if that were not the case, plaintiff's argument is legally flawed under the cases we've cited in our brief. The Jarena case and the Bensonville case, Court of Appeals cases, which make it absolutely clear mere fact the federal government has provided funding for activity doesn't make the government per se responsible for the use of that funding. And plaintiffs cite the Gautreaux case from the Seventh Circuit. But I would point the court to page 740 of that decision. And the reason that there was federal action found in that case is because the court found that HUD, I'm quoting, effectively directed and controlled each and every step of what the housing project was doing. And the plaintiffs don't allege that here. They couldn't prove it. Obviously, this is Colorado's. These orders are Colorado's orders. They devised them. They implement them. They enforce them. No federal aid goes to that. And federal government did not itself in any way become intimately involved in carrying out or devising those orders. The plaintiffs have relied upon a regulation, 44 CFR 206.36, which says that the governor of a state must certify that the governor has taken appropriate action under state law in order to obtain FEMA funding under the Stafford Act. And as the Turey Declaration also explains, that doesn't mean that the federal government is involved with that kind of determination and substance. The government just takes that on its face as acceptable, which makes sense under the statute because states are supposed to only apply for federal aid when they can't handle a disaster themselves. So that's why the statute requires certification, but the government doesn't look beyond that. A couple of other quick points. Plaintiffs seem to believe that RFRA itself per se provides standing in a case, and that's not true for multiple reasons. First of all, the statute itself, Section 1C, says that standing under RFRA is governed by general standing rules, Article 3 rules. And of course, we know that the irreducible minima of standing under Article 3 includes causation and redressability, neither of which the plaintiffs can show here. And RFRA itself requires proof of causation by the government itself, that's Section B2. And then even beyond that, it's clear under Spokio v. Robbins, cited in our brief, that a party who I see that I'm out of time, I'd be happy to answer any questions from the court, but I'd also be happy to just stop. I don't see any questions. Thank you, Mr. Sturgill. Thank you. Rebuttal? Yes, just a couple of notes, Your Honor. The problem with CEDEA is we showed hundreds of searches belong to those categories of people who can assemble, who cannot wear masks, who can act in their normal lives, and even somebody who goes to church in those other capacities can do all those things normally, but once they go to the church, they can't because of the way CEDEA is crafted with all these exemptions and the way it is effected upon the people through dozens of exemptions. Mutinous, I'd like to just quote from Roman Catholic Diocese, says, if we dismiss this case, nothing would prevent the governor from reinstating the challenge restrictions tomorrow. And that's the situation we have unless we get strict scrutiny. That's really where we are right now is just asking for strict scrutiny of this statute. The other points I wanted to address, Colorado says, well, it's not right now doing social distancing, limiting capacity at churches, requiring sanitation. These could be reinstituted tomorrow. We're asking for declaratory relief on this statute that supposedly allows all this and without due process of law, I might add. They argue, well, we posted on the website, so that's due process. And briefly as to the federal defendants, the Stafford Act has in the act itself and in the regulation of prohibition against discrimination against religion and the federal defendants' responses, well, we don't check for that. So that's really not a response. This is what RFRA was designed to do. Council, you need to close it up. Your time has expired. Thank you. All right. Thank you. All right. Council, we appreciate your arguments today.